UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

BILLIE D. MCKINNEY,

               Petitioner,

v.

SHERRY L. BURT,

               Respondent.

_____/

Case No. 1:19-cv-76

Honorable Robert J. Jonker

## **OPINION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

I.     Factual allegations

Petitioner Billie D. McKinney is incarcerated with the Michigan Department of Corrections at the Muskegon Correctional Facility (MCF).  Following a jury trial in the Kent County Circuit Court, Petitioner was convicted of assault with intent to murder (AWIM), Mich. Comp. Laws § 750.83, carrying a concealed weapon, Mich. Comp. Laws § 750.227, and carrying a firearm during the commission of a felony (felony firearm), Mich. Comp. Laws § 750.227b.  On April 29, 2014, the court sentenced Petitioner as a habitual offender-second offense, Mich. Comp. Laws § 769.10, to a prison term 27 to 50 years for the assault conviction and 2 to 5 years on the concealed weapon conviction, to be served concurrently to each other but consecutively to a sentence of 2 years for felony firearm.

On February 1, 2019, Petitioner timely filed his habeas corpus petition.  The petition raises eleven grounds for relief, as follows:

I.      Petitioner was denied due process where the prosecutor threatened and intimidated witnesses through investigative subpoenas and threats of perjury.

II.     The trial court erred in denying Petitioner's motion to strike the audio recordings.

III.    Petitioner had a due process right to be informed of the charges against him and this right was violated when the complaint and warrant were not officially filed.

IV.     Petitioner's Fourth and Fourteenth Amendment rights against unreasonable search and seizure, and to due process, were violated where the felony complaint was defective because it was not made upon the personal knowledge, information and belief of the complaining witness.

V.      Petitioner was denied his constitutional due process right to be present at critical stages of his trial.

VI.     Petitioner was denied his constitutional right to a speedy trial.

VII.    Petitioner's Sixth Amendment right to counsel was violated when he was forced to proceed to trial with counsel that he had fired two months before trial. Additionally, his Fourteenth Amendment right to due process was violated when this claim was denied without holding an evidentiary hearing.

VIII.   Petitioner's Fourteenth Amendment right to due process was violated because there is insufficient evidence to establish beyond a reasonable doubt that one of the essential elements of the offense of assault with intent to commit murder (intent to kill) existed.

IX.     Petitioner received ineffective assistance of trial counsel, contrary to the Sixth Amendment, when counsel failed to investigate and call Leontae Craig to testify that Petitioner was not the shooter; counsel failed to assert Petitioner's speedy trial rights; and counsel waived Petitioner's presence during critical stages of the trial.

X.      Petitioner's Sixth Amendment right to a jury trial was violated when he was sentenced on the basis of judge-found facts with respect to the offense variables.

XI.     Petitioner received ineffective assistance of appellate counsel on his direct appeal, contrary to the Sixth Amendment.

(Pet., ECF No. 1, PageID.6-10, 17-26.)

The facts underlying Petitioner's convictions were concisely summarized by the Michigan Court of Appeals as follows:

On [July 14, 2013], Alicia Martin, a recent high school graduate, hosted a party to celebrate her graduation. The party was held in her backyard, where there was an above-ground pool enclosed by a deck. Martin testified at trial that she only invited approximately 50 friends, but word of the party quickly spread to others and by 10:00 or 11:00 p.m., there were approximately 150 people at the house. According to multiple witnesses, among the partygoers was a group of individuals known to be associated with a local gang called "Bouldercrest."

Multiple witnesses testified at defendant's trial. While each witness's account of the events varied slightly, the majority consistently testified that around 11:30 p.m., a group of between six and ten individuals arrived at the party and entered the backyard. Included in this group was defendant. According to multiple witnesses, several of these individuals, including defendant, were associated with the "Bemis" gang, another local gang and a rival of the "Bouldercrest" gang. From the moment the "Bemis" gang entered the backyard, there was "conflict." According to various witnesses, members from the "Bemis" gang, who were then standing near the stairs to the pool deck, began yelling at members of the "Bouldercrest" gang, who were standing on the deck. At some point, defendant was punched and fell to the ground.

A fight then ensued between defendant and other members of his gang and members of the "Bouldercrest" gang. During the fight, gunshots erupted on the pool deck. Several people were injured, including two members of the "Bouldercrest" gang and an innocent bystander.

Witness identifications of the shooter varied; however, several witnesses recalled that the shooter was wearing an orange, "orangish," or "bright" shirt, which matched the description of the shirt defendant was wearing that night. Moreover, at least one witness identified the shooter as the same individual who had earlier been punched. Finally, several witnesses specifically identified defendant as the shooter. As a result of eyewitness identifications, defendant was eventually arrested. While in the Kent County jail, defendant made incriminating statements about the shooting to a fellow inmate, Jacqte Beal, some of which were recorded by Beal while he was wearing a recording device. Specifically, among other things, defendant admitted being one of two shooters and identified the type of weapon he used. Defendant also elicited Beal's help in sending a letter to defendant's girlfriend, Sierra Wyant, in which he asked Wyant to provide an alibi for defendant. The letter, along with portions of the recorded conversation between defendant and Beal, were admitted at defendant's trial.

(Mich. Ct. App. Op., ECF No. 1-3, PageID.87-88.) The court of appeal's description of the facts is consistent with Petitioner's more detailed recounting of each witness's testimony set out in his appeal brief. (Pet'r's Appeal Br., ECF No. 1-2, PageID.35-59.)

Following a six-day trial, the jury found Petitioner guilty of all charges. The trial judge imposed sentence as set forth above. Petitioner, with the assistance of counsel, appealed his convictions to the Michigan Court of Appeals raising the issues identified as I and II above. Petitioner filed a Standard 4 brief[1] raising the issues identified as III and IV above. Petitioner

---

[1] The Michigan Supreme Court's administrative order regarding minimum standards for indigent criminal appellate defense services provides:

**Standard 4**
When a defendant insists that a particular claim or claims be raised on appeal against the advice of counsel, counsel shall inform the defendant of the right to present the claim or claims in propria persona. Defendant's filing shall consist of one brief filed with or without an appropriate accompanying motion. Counsel shall also provide such procedural advice and clerical assistance as may be required to conform the defendant's filing for acceptability to the court. The defendant's filing in propria persona must be received by the Court of Appeals within 84 days after the appellant's brief is filed by the attorney . . . .

Mich. Administrative Order No. 2004-6.

represents that he "specifically informed appellate counsel to raise . . . issues [V-XI] but counsel refused without reason . . . ." (Pet'r's Br. in Support of Mot. for Relief from J., ECF No. 3, PageID.174; *see also* Pet'r's Aff., ECF No. 3, PageID.197 ("I told appellate counsel to raise the claims contained in the 6500 motion on direct appeal, but he refused[.]").)

By unpublished opinion issued September 10, 2015, the Michigan Court of Appeals rejected Petitioner's four challenges and affirmed Petitioner's convictions and sentences. (Mich. Ct. App. Op., ECF No. 1-3, PageID.87-92.) Petitioner then filed a *pro per* application for leave to appeal in the Michigan Supreme Court raising the same four issues raised in the court of appeals. (Pet'r's Appl. for Leave to Appeal, ECF No. 1-3, PageID.94-131.) The Michigan Supreme Court denied leave by order entered May 2, 2016. (Mich. Order, ECF No. 3, PageID.139.)

Petitioner returned to the trial court. He filed a motion for relief from judgment raising issues V-XI above. (Pet'r's Mot. for Relief from J., ECF No. 3, PageID.141-202.) The trial court denied relief by opinion and order entered June 21, 2017. (Kent Cty. Cir. Ct. Op. & Order, ECF No. 3, PageID.204-210.) Petitioner sought leave to appeal that decision in the Michigan Court of Appeals and the Michigan Supreme Court. Those courts denied leave by orders entered April 18, 2018, and December 4, 2018, respectively. (Mich. Ct. App. Order, ECF No. 3, PageID.212; Mich. Order, ECF No. 3, PageID.214.)

Petitioner then filed the instant petition.

II.     AEDPA standard

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any

claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood

and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

III.    Procedural Default

In denying Petitioner's motion for relief from judgment, the trial court relied on Michigan Court Rule 6.508(D)(3):

> In a motion for relief from judgment, "[t]he defendant has the burden of establishing entitlement to the relief requested." MCR 6.508(D). Generally, if the motion is based on grounds for relief which could have previously been raised on appeal from the conviction and sentence, the defendant must demonstrate both "good cause for failure to raise such grounds on appeal" and "actual prejudice from the alleged irregularities that support the claim for relief." MCR 6.508(D)(3). "Actual prejudice" in the context of a conviction following trial means "but for the alleged error, the defendant would have had a reasonably likely chance of acquittal," or "the irregularity was so offensive to the maintenance of a sound judicial process that the conviction should not be allowed to stand regardless of its effect on the outcome of the case." MCR 6.508(D)(3)(b).

(Kent Cty. Cir. Ct. Op. & Order, ECF No. 3, PageID.205-206.) The court recognized, but rejected, Petitioner's argument that his appellate counsel's ineffective assistance was cause for failing to raise the issues on direct appeal. The court concluded it was not ineffective assistance to raise the

issues because they lacked merit. Moreover, the trial court determined that Petitioner could not establish prejudice because the issues lacked merit and because Petitioner was admittedly aware of the issues and could have raised them himself in his Standard 4 brief. The court concluded: "his arguments lack merit and he has not shown 'good cause' or 'actual prejudice' related to the alleged errors." (*Id*., PageID.210.)

The trial court's refusal to consider Petitioner's motion-for-relief-from-judgment issues because Petitioner had failed to raise them on direct appeal is a form of procedural default. When a state-law default prevents further state consideration of a federal issue, the federal courts ordinarily are precluded from considering that issue on habeas corpus review. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991); *Engle v. Isaac*, 456 U.S. 107 (1982). To determine whether a petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the state court enforced the rule so as to bar the claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim. *See Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir. 2004); *accord Lancaster*, 324 F.3d at 436-37; *Greer v. Mitchell*, 264 F.3d 663, 672 (6th Cir. 2001); *Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001). In determining whether a state procedural rule was applied to bar a claim, a reviewing court looks to the last reasoned state-court decision disposing of the claim. *See Ylst*, 501 U.S. at 803; *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010).

The Court concludes that Petitioner failed to comply with the state rule that a criminal defendant must raise his issues on direct appeal and that the state court relied on Petitioner's failure to bar the claim. That leaves the question of whether the default operates as an independent and adequate state ground that forecloses federal habeas constitutional review.

A state law procedural rule is adequate and independent when it was "firmly established and regularly followed" at the time of the asserted procedural default. *Rogers v. Howes*, 144 F.3d 990, 992 (6th Cir. 1998) (citing *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991)). Although there may be an "exceptional case in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question," *see Lee v. Kemna*, 534 U.S. 362, 376 (2002), this case does not fall within that "limited category." *Id.*

Under Mich. Ct. R. 6.508(D)(3), a defendant may not collaterally attack a conviction based upon claims that could have been raised on direct appeal. For such a claim, the defendant is entitled to relief only if he can establish "good cause" for failing to raise the grounds on appeal and "actual prejudice," as shown by a "reasonably likely chance of acquittal" or an "irregularity so offensive to the maintenance of a sound judicial process that the conviction should not be allowed to stand." Mich. Ct. R. 6.508(D)(3)(a)-(b).

In assessing how "firmly" a state procedural rule has been established, the critical inquiry is whether, viewed from the time of Petitioner's later significant actions or inaction, he could be deemed to have been apprised of the procedural rule's existence. *Luberda v. Trippett*, 211 F.3d 1004, 1006-07 (6th Cir. 2000). Because Mich. Ct. R. 6.508(D) was enacted in 1989 and Petitioner's conviction and appeals took place years thereafter, Mich. Ct. R. 6.508(D) was a "firmly established" procedural rule for purposes of Petitioner's action. *See Luberda*, 211 F.3d at 1007; *Rogers*, 144 F.3d at 994. The Sixth Circuit has also concluded that the rule is regularly followed. *Gates v. Hoffner*, No. 17-2198, 2018 WL 1614261, at *2 (6th Cir. Mar. 23, 2018) (citing *Simpson v. Johnson*, 238 F.3d 399, 407 (6th Cir. 2000)).

When a petitioner has procedurally defaulted an issue in the state courts, the federal habeas court will only consider the merits of the issue if the petitioner can show "cause" for the

procedural default and "actual prejudice" as result of the alleged federal violation or can show actual innocence. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir. 1999); *Rust v. Zent*, 17 F.3d 155, 160-61 (6th Cir. 1994). To show cause sufficient to excuse a failure to raise claims on direct appeal, Petitioner must point to "some objective factor external to the defense" that prevented him from raising the issue in his first appeal. *Murray*, 477 U.S. at 488; *see McCleskey v. Zant*, 499 U.S. 467, 497 (1991). Where a petitioner fails to show cause, the court need not consider whether he has established prejudice. *See Engle*, 456 U.S. at 134 n.43; *Leroy v. Marshall*, 757 F.2d 94, 100 (6th Cir. 1985).

Petitioner contends his appellate counsel rendered ineffective assistance which constitutes cause for Petitioner's failure to raise issues V-XI on direct appeal. In *Sheffield v. Burt*, 731 F. App'x 438 (6th Cir. 2018), a Sixth Circuit panel considered an ineffective assistance of counsel claim in similar circumstances. Sheffield had failed to raise a particular sentencing challenge on direct appeal, either in the brief prepared with the assistance of counsel or in his Standard 4 brief. Sheffield raised the issue for the first time in a motion for relief from judgment. The trial court rejected the issue under Mich. Ct. R. 6.508(D)(3). When Sheffield raised the issue in his habeas petition, the federal district court ignored the procedural default and considered the claim on its merits. The Sixth Circuit reversed, holding that the district court should not have bypassed the procedural default because "a straightforward analysis of settled state procedural default law [was] possible." *Sheffield,* 731 F. App'x at 441. The appellate court determined that the record supported a determination that Sheffield was aware of the issue during his direct appeal, *Id*. at 442 n.2, and that he "had the opportunity to raise any issues in his Standard 4 brief on direct appeal that he felt his appellate counsel should have raised . . . [yet h]e did not raise the issue." *Id*.

at 442 (footnote omitted). The court concluded that, under those circumstances, Petitioner had failed to demonstrate cause.

The *Sheffield* analysis supports the conclusion that Petitioner has also failed to demonstrate cause. Petitioner swears that he was aware of each of the issues he raised in his state court collateral challenge and that he informed his appellate counsel about each issue. (Pet'r's Aff., ECF No. 3, PageID.197 ("I told appellate counsel to raise the claims contained in the 6500 motion on direct appeal, but he refused[.]").) Petitioner, like Sheffield, had the opportunity to raise each of his collateral challenges in his Standard 4 brief, but he did not. There was certainly no "objective factor external to the defense" that prevented him from raising the issue in his first appeal. *Murray*, 477 U.S. at 488. Therefore, Petitioner has not established cause and cannot overcome his procedural default based on "cause and prejudice."

Petitioner also has not demonstrated that manifest injustice would result because he has not made a colorable claim of innocence; he has not shown that any constitutional error "probably" resulted in the conviction of one who was actually innocent. *Schlup v. Delo*, 513 U.S. 298, 322 (1995) (citing *Murray*, 477 U.S. at 495). This requires a showing "that 'in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *Coleman*, 244 F.3d at 540 (quoting *Schlup*, 513 U.S. at 329).

Petitioner submits the affidavit of Leontae Craig. Mr. Craig avers that he helped Petitioner up after he was knocked to the ground and together they walked around to the front of the house when they heard gunshots. Therefore, according to Petitioner, he could not have been the gunman.

If Mr. Craig's account was the only account of the events at the graduation party, Petitioner's submission might suffice as a colorable claim of innocence. The account, however, is

inconsistent with the testimony of multiple witnesses who identified the shooter as Petitioner either by name, by clothing, or as the party-goer who was hit. The jurors, relying on several witnesses who contradicted Mr. Craig's story, could have reasonably relied on that testimony to find Petitioner guilty beyond a reasonable doubt.

Moreover, the evidence is not new. Mr. Craig told that story to police. He also informed Petitioner's counsel. Petitioner's counsel subpoenaed Mr. Craig to provide that testimony during Petitioner's trial. Mr. Craig did not comply. The Michigan Court of Appeals determined that there was no evidence "in the record that it was not Craig's free and voluntary choice to not testify." (Mich. Ct. App. Op., ECF No. 1-3, PageID.89.) Petitioner offers no evidence, much less clear and convincing evidence, to rebut the presumption of correctness this Court must afford that factual determination.

Because Petitioner has failed to demonstrate cause or show a manifest injustice, the Court concludes that habeas review of Petitioner's issues V-XI is barred by the doctrine of procedural default.

IV. Sentence Based on Judge-Found Facts

Petitioner's habeas issue X challenges his sentences for two reasons: first, Petitioner contends that the trial court erred when it scored the offense variables for the sentencing guidelines; and second, the trial court denied Petitioner his Sixth Amendment right to trial by jury when it calculated Petitioner's mandatory sentencing guidelines based on "judge-found" facts. The first reason could have been raised in Petitioner's direct appeal but was not. Review is plainly barred by the doctrine of procedural default. The second reason, however, presents a more difficult question.

Petitioner essentially argues that the trial court judge violated his Sixth Amendment right to a trial by jury by using, to enhance his sentence, facts that had not been admitted by Petitioner or found by a jury beyond a reasonable doubt. Petitioner's argument is based on the line of cases beginning with *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and including *Blakely v. Washington*, 542 U.S. 296 (2004), *United States v. Booker*, 543 U.S. 220 (2005), and *Alleyne v. United States*, 570 U.S. 99 (2013).

In *Apprendi*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. *Apprendi* enunciated a new rule of Sixth Amendment jurisprudence.

In the subsequent case of *Blakely*, the Court applied the rule of *Apprendi* to a state sentencing-guideline scheme, under which the maximum penalty could be increased by judicial fact-finding. The *Blakely* Court held that the state guideline scheme violated the Sixth and Fourteenth Amendments, and reiterated the rule that any fact that increased the maximum sentence must be "admitted by the defendant or proved to a jury beyond a reasonable doubt." *See Booker*, 543 U.S. at 232 (citing *Blakely*, 542 U.S. at 303).

In *Booker*, 543 U.S. at 220, the Supreme Court determined that its conclusion with regard to the state sentencing guideline scheme in *Blakely* would also apply to the federal sentencing guidelines. One group of five justices concluded that the federal sentencing guidelines conflicted with the Sixth Amendment. Another group of five justices determined that the appropriate remedy was to make the guidelines discretionary.

Subsequently, in *Alleyne*, 570 U.S. at 99, the Supreme Court held that the *Blakely* line of cases applies equally to mandatory minimum sentences. Shortly thereafter, the Michigan

Court of Appeals concluded that *Alleyne* did not prohibit judicial fact-finding in scoring the Michigan sentencing guidelines that generated the minimum range under Michigan's indeterminate sentencing regimen.  *See People v. Herron,* 845 N.W.2d 533, 539 (Mich. App. 2013).[2]  The Sixth Circuit also suggested that *Alleyne* did not decide the question whether judicial fact-finding under Michigan's indeterminate sentencing scheme violated the Sixth Amendment. *See Kittka v. Franks*, 539 F. App'x 668, 673 (6th Cir. 2013).  As a consequence, the Sixth Circuit at least suggested that the question is not a matter of clearly established Supreme Court precedent. *Id.* (citing *Montes v. Trombley*, 599 F.3d 490, 498 (6th Cir. 2010)); *see also Saccoccia v. Farley*, 573 F. App'x 483, 485 (6th Cir. 2014) ("But *Alleyne* held only that 'facts that increase a mandatory *statutory* minimum [are] part of the substantive offense.'. . . It said nothing about guidelines sentencing factors . . . .") (quoting *Alleyne*, 570 U.S. at 113 (emphasis added)).

The Sixth Circuit has since clarified that "Michigan's sentencing regime violated *Alleyne*'s prohibition on the use of judge-found facts to increase mandatory minimum sentences." *Robinson v. Woods*, 901 F.3d 710, 716 (6th Cir. 2018).  The Michigan Supreme Court reached the same conclusion in a 5-2 decision in *People v. Lockridge*, 870 N.W.2d 502 (Mich. 2015).  The court reasoned that, because the "guidelines *require* judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables (OVs) that *mandatorily* increase the floor of the guidelines minimum sentence range," they increase the "mandatory minimum" sentence under *Alleyne*.  *Lockridge*, 870 N.W.2d at 506 (emphasis in original).  Consequently, the *Lockridge* court held that the mandatory application of Michigan's sentencing guidelines was unconstitutional.  The Court's remedy, consistent with *Booker*, was to make the guidelines advisory only.  *Id.* at 520-21.

---

[2] Under Michigan's system, the guideline determination affects only the minimum term.  The maximum term is always the maximum punishment permitted by statute.

Because Petitioner's "judge-found" facts argument is based on *Alleyne*, and the *Alleyne* decision preceded his conviction, Petitioner could have raised the issue on direct appeal. He could not have based his argument on *Lockridge*, however, because *Lockridge* was decided months after counsel's brief and his Standard 4 brief were filed. In light of the Michigan Court of Appeals decision in *Herron*, it might easily have been considered futile to raise the issue on direct appeal for any purpose other than preservation. Thus, there may be cause to excuse Petitioner's failure to raise the "judge-found" facts issue on direct appeal. Accordingly, the Court will proceed to consider prejudice for that claim.

The Michigan Supreme Court made its holding in *Lockridge* applicable to cases still "pending on direct review." *Id*. at 523. Petitioner's case was still pending on direct review at the time the *Lockridge* court reached its decision. Accordingly, *Lockridge* applies. The fact that *Lockridge* applies to Petitioner's case, however, does not mean that Petitioner is entitled to relief.

The *Lockridge* court identified a limited group of defendants that might demonstrate the potential for plain error sufficient to warrant a remand to the trial court: "defendants (1) who can demonstrate that their guidelines minimum sentence range was actually constrained by the violation of the Sixth Amendment and (2) whose sentences were not subject to an upward departure . . . ." *Id*. at 522 (footnote omitted). If a remand is appropriate, the trial court, on remand, must determine if it "would have imposed a materially different sentence but for the unconstitutional restraint . . . ." *Id*. at 524. The *Lockridge* court's recognition that making the guidelines discretionary would not make every previously-imposed sentence constitutionally infirm echoes the conclusion of the *Booker* Court when it adopted the same remedy. *See Booker*, 543 U.S. at 267-68.

The trial court made clear that the mandatory nature of the guidelines did not impact

Petitioner's sentence:

> In this case, while a remand under *Lockridge* could have been requested due to judicial fact-finding involved with some of the variables, it would not have made a difference. Based on the sentencing variables, which the Court found and still finds to be properly scored, defendant's minimum sentence range under the guidelines was 171 to 356 months. After hearing all of the evidence at trial and reviewing all of the sentencing materials, the Court found a minimum sentence of 27 years (324 months) to be proper. This was toward the top of the guidelines range, but not at the very top, and was determined to be proportionate, reasonable, and appropriate. Furthermore, while the guidelines are now advisory and the Court has more flexibility to depart from them, this Court still generally finds sentences with the advisory range to be proper in the absence of circumstances not fully taken into account in the sentencing variables and guidelines. The mandatory nature of the guidelines at the time of defendant's sentence did not impact his sentence.

(Kent Cty. Cir. Ct. Op. & Order, ECF No. 3, PageID.209.)

As the courts have recognized, purely advisory applications of the guidelines do

not run afoul of the Sixth Amendment. *See Booker*, 543 U.S. at 232 ("If the Guidelines as currently

written could be read as merely advisory provisions that recommended, rather than required, the

selection of particular sentences in response to differing sets of facts, their use would not implicate

the Sixth Amendment. We have never doubted the authority of a judge to exercise broad discretion

in imposing a sentence within a statutory range."); *see also Apprendi,* 530 U.S. at 481-82

(reiterating that "'a sentence imposed by a federal district judge, *if within statutory limits,* is

generally not subject to review'") (emphasis added) (quoting *United States v. Tucker*, 404 U.S.

443, 447 (1972)).

Because the trial court determined that it would have imposed the same sentence

whether the guidelines were mandatory or just advisory, Petitioner cannot demonstrate that he was

prejudiced by the mandatory nature of the guidelines at the time he was sentenced. Absent

prejudice, Petitioner's "judge-found" facts claim is barred by the doctrine of procedural default.

V.     Jurisdictional Defect

Petitioner next claims that because of procedural defects, the state court never obtained jurisdiction. The Michigan Court of Appeals disagreed:

> Defendant next argues in his brief filed in propria persona that the trial court lacked subject matter jurisdiction over him because the complaint and warrant were defective. We disagree. Subject matter jurisdiction refers to a court's right to exercise judicial power over a class of cases, and is not dependent on the particular facts of the case. *People v. Kiyoshk*, 493 Mich 923; 825 NW2d 56 (2013). Circuit courts are courts of general jurisdiction and have subject matter jurisdiction over all felony cases. *People v. Goecke*, 457 Mich 442, 458; 579 NW2d 868 (1998). In this case, the lower court record contains an information charging defendant with three felonies, which was filed after the preliminary examination. The circuit court acquired subject matter jurisdiction over defendant's case when the district court filed in the circuit court the return of examination, MCR 6.110(G). *Goecke*, 457 Mich at 458-459. To the extent defendant argues that the trial court lacked personal jurisdiction over him, he has waived such a challenge by appearing before the trial court and waiving his arraignment. *See Kiyoshk*, 493 Mich at 924; *People v. Lown*, 488 Mich 242, 268; 794 NW2d 9 (2011).

(Mich. Ct. App. Op., ECF No. 1-3, PageID.91-92.)

The determination of whether a state court is vested with jurisdiction under state law over a criminal case is a function of the state courts, not the federal courts. *Wills v. Egeler*, 532 F. 2d 1058, 1059 (6th Cir. 1976). It is well-settled that a purported violation of state law does not provide a basis for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.*

Moreover, the state court here determined that there were no jurisdictional defects. It is not the province of a federal habeas court to re-examine state-law determinations on state-law questions. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle*, 502 U.S. at 68. The decision of the state courts on a state-law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983). The Sixth Circuit repeatedly has recognized "'that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal

court sitting in habeas corpus.'" *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Bradshaw*, 546 U.S. at 76). Specifically, with regard to jurisdictional issues, the Sixth Circuit has stated that "a state court's interpretation of state jurisdictional issues conclusively establishes jurisdiction for purposes of federal habeas review." *Strunk v. Martin*, 27 F. App'x 473, 475 (6th Cir. 2001). Accordingly, this Court is bound by the state court's determination that jurisdiction over Petitioner was established.

VI.    Defective Complaint and Warrant

Petitioner then challenges the complaint and warrant from his criminal prosecution. Based on perceived procedural defects in the complaint and warrant, Petitioner contends evidence against him was inadmissible, the trial court never obtained jurisdiction, and his detention, both before and after trial, is improper.

As noted above, Petitioner's jurisdictional argument is not cognizable on habeas review. Review of Petitioner's illegal search and seizure claim is also not cognizable because it is barred by the doctrine of *Stone v. Powell*, 428 U.S. 465 (1976); *see also Queen v. Scroggy*, 99 F.3d 1302, 1332 (6th Cir. 1996) (noting that it is well-settled that *Stone v. Powell* bars Fourth Amendment claims). In *Stone v. Powell*, the Supreme Court held that federal habeas review is not available to a state prisoner alleging that his conviction rests on evidence obtained through an unconstitutional search or seizure, as long as the state has given the petitioner a full and fair opportunity to litigate the claim. *Id.*; *see also Rashad v. Lafler*, 675 F.3d 564, 570 (6th Cir. 2012).

For the rule of *Stone v. Powell* to apply, the state must have provided, in the abstract, a mechanism by which to raise the Fourth Amendment claim, and the presentation of the claim in the case before the court must not have been frustrated by failure of that mechanism. *See Gilbert v. Parke*, 763 F.2d 821, 823 (6th Cir. 1985). If these two inquiries are satisfied, federal habeas

review of the Fourth Amendment claim is precluded, even if the federal court deems the state-court determination of the claim to have been in error. *Id.* at 824; *accord Jennings v. Rees*, 800 F.2d 72 (6th Cir. 1986); *Markham v. Smith*, 10 F. App'x 323, 326 (6th Cir. 2001).

Petitioner cannot satisfy either prong of the *Stone v. Powell* standard. First, it is beyond dispute that Michigan has a state procedural mechanism that provides a defendant a full opportunity to raise a Fourth Amendment claim before trial. Even before the United States Supreme Court decided that the federal exclusionary rule applied to state criminal proceedings, Michigan courts applied the exclusionary rule to the fruits of unconstitutional searches and seizures. *See People v. Margelis*, 186 N.W. 488 (Mich. 1922). After *Mapp v. Ohio*, 367 U.S. 643 (1961), Michigan courts consistently have acknowledged their duty, under both the federal and state constitutions, to suppress evidence seized in violation of the Fourth Amendment. *See, e.g., People v. David*, 326 N.W.2d 485, 488 (Mich. Ct. App. 1982). Consequently, Michigan affords criminal defendants a means to raise Fourth Amendment challenges.

To satisfy the remaining prong of *Stone v. Powell*, Petitioner must allege facts showing that the state corrective mechanism has somehow broken down. *See, e.g., Agee v. White*, 809 F.2d 1487, 1490 (11th Cir. 1987) (habeas review not barred when state appellate court completely ignored Fourth Amendment claim). The Sixth Circuit pointedly has held that the doctrine of *Stone v. Powell* applies, even if the federal court deems the state-court determination of the Fourth Amendment claim to have been in "egregious error." *Gilbert*, 763 F.2d at 824 (citing *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982)).

Petitioner has not alleged any facts indicating that the state's mechanism has broken down in his case. The court of appeals considered and rejected Petitioner's claim:

> [D]efendant's argument that the district court could not issue an arrest warrant because the complaint was defective lacks merit. The complaint, submitted with

the arrest warrant and an affidavit of probable cause, listed the charged offenses, the statutory citations for the charges, and the factual predicate for the charges. The affidavit more specifically set forth this information. Each of these documents was sworn to before the magistrate. The complaint therefore satisfied the basic requirements of MCR 6.101(A). Likewise, the magistrate's probable cause finding was not erroneous. A finding of probable cause on a complaint is proper where the complaint and supporting facts are sufficient to enable the magistrate "to make the judgment that the charges are not capricious and are sufficiently supported to justify bringing into play further steps of the criminal process." *Jaben v. United States*, 381 US 214, 224-225; 85 S Ct 1365; 14 LEd2d 345 (1965). The standard of probable cause to support an arrest "looks only to the probability that the person committed the crime as established at the time of arrest" without regard to whether the prosecution can ultimately prove guilt at trial. *People v. Cohen*, 294 Mich App 70, 76; 816 NW2d 474 (2011) (citation omitted). Based on our review of the complaint and affidavit, the magistrate had more than enough information to find probable cause that the offenses were committed and probable cause to believe that defendant committed them.

(Mich. Ct. App. Op., ECF No. 1-3, PageID.92.) Therefore, it appears that the Michigan courts gave Petitioner's claim full and proper consideration.

Even if this Court were to disagree with the determinations of the Michigan courts, that disagreement would be insufficient to demonstrate a break-down in the state court's corrective mechanisms. *Gilbert*, 763 F.2d at 824. Accordingly, because Petitioner has failed to demonstrate either prong of *Stone v. Powell*, his claim of illegal search and seizure are barred on habeas review.

Moreover, Petitioner's claim that his arrest and detention were and are improper does not provide any basis for habeas corpus relief. *See Gerstein v. Pugh*, 420 U.S. 103, 119 (1975) (illegal arrest or detention does not void a subsequent conviction). The method by which petitioner's presence was procured at trial does not provide a basis for invalidating his criminal conviction. *See Immigration & Naturalization Service v. Lopez-Mendoza*, 468 U.S. 1032, 1039 (1984) ("The 'body' or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred."); *Frisbee v. Collins*, 342 U.S. 519, 522 (1952); *Ker v. Illinios*, 119 U.S. 436, 444 (1886); *Browning v. Jabe*, No. 88-1307, 1990 WL 6943, at *1 (6th Cir.

Feb. 1, 1990) ("petitioner's arguments that his arrest was absent probable cause . . . [are] irrelevant, as an unlawful arrest is not a defense to a valid conviction.") (*citing United States v. Crews*, 445 U.S. 463, 474 (1980)). Accordingly, his claim of illegal arrest is to no avail.

VII.    Admission of Recorded Jailhouse Conversation

Petitioner next contends that his trial was rendered fundamentally unfair because the trial court admitted an audio recording of a jailhouse conversation between Petitioner and fellow inmate Jaqte Beal. He claims the court should have excluded the recording as unintelligible. The court of appeals concluded the recording was properly admitted:

> As at trial, the basis for defendant's challenge to the audio recordings is that the recordings were of poor quality, difficult to understand, and unintelligible at times. The trial court acknowledged as much after reviewing the recordings. Nonetheless, the trial court identified parts of the recordings where defendant could be heard making "potentially incriminating statements," such that the jury should be allowed to hear them. Based on our independent review of the recordings, we cannot conclude that the trial court abused its discretion. While the tapes were not of the best quality and contained unintelligible portions, they were not so unintelligible as to be inadmissible as a matter of law. *See People v. Karalia*, 35 Mich App 541, 545-546; 192 NW2d 676 (1971); *People v. Frison*, 25 Mich App 146, 147-148; 181 NW2d 75 (1970). Moreover, we note that in allowing the recordings to be played, the trial court carefully instructed the jury to use its independent judgment as to the value of the recordings and to disregard them if it found them to be of little value. We also note that Beal testified at trial and personally recalled some of the incriminating statements defendant made, thereby further authenticating the recordings.

(Mich. Ct. App. Op., ECF No. 1-3, PageID.91.)

The extraordinary remedy of habeas corpus lies only for a violation of the Constitution. 28 U.S.C. § 2254(a). As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. at 62, an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Id.* at 67-68. Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a

conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68. State-court evidentiary rulings cannot rise to the level of due process violations unless they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental. *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quotation omitted); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). This approach accords the state courts wide latitude in ruling on evidentiary matters. *Seymour*, 224 F.3d at 552 (6th Cir. 2000).

Further, under the AEDPA, the court may not grant relief if it would have decided the evidentiary question differently. The court may only grant relief if Petitioner is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law or if the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts. *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000). Petitioner has not met this difficult standard.

Although Petitioner's argument, in referencing fairness, hints at a violation of due process, he relies entirely on one state case: *People v. Frison*, 181 N.W.2d 75 (Mich. Ct. App. 1970). *Frison* was not decided on constitutional grounds. The court simply reiterated the requirements necessary to establish a proper foundation for the admission of a recording. *Frison*, 181 N.W.2d at 76-77. The *Frison* court quoted a section from American Jurisprudence 2d regarding partial or partially inaudible recordings:

> "The fact that a recording may not reproduce an entire conversation, or may be indistinct or inaudible in part, has usually been held not to require its exclusion; however, the recording may be rejected if it is so inaudible and indistinct that the jury must speculate as to what was said. It has been held that unless the unintelligible portions of a tape recording are so substantial as to render the recording as a whole untrustworthy, the recording is admissible and the decision whether to admit it should be left to the sound discretion of the trial judge."

*Frison*, 181 N.W.2d at 77 (quoting 29 Am. Jur. 2d, Evidence, § 436, p. 495).

*Frison's* statement regarding the admissibility of partially inaudible sound recordings in the Michigan courts is entirely consistent the admissibility of such recordings in the federal courts:

> The fact that a tape recording has some unintelligible portions does not automatically render the entire recording inadmissible. *United States v. Robinson*, 763 F.2d 778, 781 (6th Cir. 1985) (*Robinson II*). For the tape to be inadmissible, the incomprehensible portions must be so "substantial as to render the recordings as a whole untrustworthy." *Id*. (citations omitted). *Accord United States v. West*, 948 F.2d 1042, 1044 (6th Cir. 1991), *cert. denied*, 502 U.S. 1109 (1992).

*United States v. Wilkinson*, 53 F.3d 757, 761 (6th Cir. 1995). Though almost every federal circuit has held likewise,[3] the United States Supreme Court has never ruled on the admissibility of partially inaudible recordings, either as a matter of evidentiary law or constitutional law. Therefore, Petitioner has not shown, and cannot show, that the state court's admission of the recording is in conflict with a decision reached by the Supreme Court on a question of law or that the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts. Accordingly, he is not entitled to habeas relief on this issue.

VIII.    Witness Intimidation

Finally, Petitioner complains that the prosecutor violated Petitioner's right to due process by intimidating witness Leontae Craig through the investigative subpoena examination and by threatening to bring perjury charges. Several Supreme Court cases provide support for Petitioner's claim. In *Crane v. Kentucky*, 476 U.S. 683 (1986), the Court concluded that the United States Constitution guarantees criminal defendants "a meaningful opportunity" to present a complete defense. *Id*. at 690. A central component of that guarantee is the right to offer the

---

[3] *See, e.g., Gorin v. United States*, 313 F.2d 641, 652 (1st Cir. 1963); *United States v. McDonald*, 198 F.3d 235 (2d Cir. 1999); *United States v. Jackson*, 649 F.2d 967 (3d Cir. 1981); *United States v. Wilson*, 578 F.2d 67 (5th Cir. 1978); *United States v. Powers*, 75 F.3d 335 (7th Cir. 1996); *United States v. Webster*, 84 F.3d 1056 (8th Cir. 1996); *United States v. Tisor*, 96 F.3d 370 (9th Cir. 1996*); United States v. Watson*, 594 F.2d 1330 (10th Cir. 1979); *United States v. Pope*, 132 F.3d 684 (11th Cir. 1998).

testimony of witnesses. *Taylor v. Illinois*, 484 U.S. 400, 409 (1988). The right to present witnesses to establish a defense precludes prosecutors and judges from improperly threatening witnesses with perjury prosecution. *Webb v. Texas*, 409 U.S. 95, 97-99 (1972).

In *United States v. Stuart*, 507 F.3d 391 (6th Cir. 2007), the court distinguished proper threats of perjury prosecution from improper ones:

> "*Webb*, however, does not stand for the proposition that merely warning a witness of the consequences of perjury demands reversal." *United States v. Pierce*, 62 F.3d 818, 832 (6th Cir. 1995). To the contrary, "the government has an obligation to warn unrepresented witnesses of [that] risk." *Id.* To establish a claim of witness intimidation, as a result, defendants must present "government conduct which amounts to substantial interference with a witness's free and unhampered determination to testify" and must prove that any inappropriate conduct was not harmless. *United States v. Foster*, 128 F.3d 949, 953 (6th Cir. 1997).

*Stuart*, 507 F.3d at 398.

The Michigan Court of Appeals recognized that the right to due process included the right to present witnesses in defense and that the right precluded prosecutors and law enforcement officers from threatening witnesses to intimidate them. (Mich. Ct. App. Op., ECF No. 1-3, PageID.88.) The appellate court concluded, however, that Petitioner had failed to factually support his claim of witness intimidation:

> The record reveals that there was a general unwillingness on the part of many witnesses to fully cooperate with the police and the prosecution, either because they were involved in the incident, had loyalties to the persons involved, or feared repercussions from "snitching" on gang members. As such, police had a difficult time interviewing the witnesses, which resulted in the decision to hold an investigative subpoena hearing. More than 20 witnesses were subpoenaed for the hearing and testified under oath. Each witness was informed at the investigative subpoena hearing that false testimony could result in a perjury charge. The record also reveals that several of the witnesses were later subpoenaed to compel their appearance at the preliminary examination. Likewise, many of the witnesses were subpoenaed to compel their appearance at trial, and some witnesses were even incarcerated on material witness warrants to compel their appearance at trial. Three witnesses testified at trial that they were ultimately charged with perjury in connection with their testimony under oath at either the subpoena hearing or the preliminary examination.

At the outset, defendant does not appear to argue, and there is no authority to support, that the investigators' mere act of convening an investigative subpoena hearing was improper. To the contrary, such proceedings are lawful. See MCL 767A.1 *et seq.* Likewise, defendant concedes that it was not improper for the investigators to inform each of the witnesses that false testimony at the investigative subpoena hearing could result in perjury charges. See MCL 767A.9; *People v. Layher*, 238 Mich App 573, 587; 607 NW2d 91 (1999); *People v. Robbins*, 131 Mich App 429, 439; 346 NW2d 333 (1984). Finally, defendant does not appear to argue, and there is no authority to support, that the prosecution's acts of subpoenaing several witnesses for the preliminary examination and trial, or of obtaining material witness warrants to compel several witnesses' appearance at trial, were in any way improper. To the contrary, these are also lawful methods of furthering the truth-seeking function of the judicial process. See MCL 767.40a; MCL 767.35. Instead, defendant's claim is limited to his argument that the prosecution committed misconduct when it singled out one defense witness, Leontae Craig, to more emphatically threaten with perjury charges than the other witnesses, causing him to not testify.

The record does not support the first portion of defendant's argument. Two detectives testified that they treated Craig the same as the other witnesses that they interviewed. One detective did acknowledge telling Craig during the interview that he did not believe his story and that "if we were able to prove his statements were false, that he could be charged with perjury," which could carry a maximum sentence of life imprisonment given the nature of the case. See MCL 767A.9(1)(b), providing that the punishment for a false statement under oath "made during the investigation of a crime punishable by imprisonment for life, by imprisonment for life or for any term of years." Although the defense subpoenaed Craig to testify at trial, nothing in the record establishes that it was not Craig's free and voluntary choice to not testify. *Robbins*, 131 Mich App at 440. The detective did nothing improper by telling Craig during the interview that the detective believed Craig's statements were untrue and that if the witness lied while testifying, and the police could prove that the testimony was untrue, the witness could be charged with perjury. We conclude this truthful admonition regarding the possibility of perjury charges falls within the general rule that "a prosecutor [here, the police] may inform a witness that false testimony could result in a perjury charge." *Layher*, 238 Mich App at 587.

(Mich. Ct. App. Op., ECF No. 1-3, PageID.88-89.) The court of appeals went on to distinguish those facts from the facts in *Webb* that resulted in a constitutional violation. (*Id.*, PageID.89-90.)

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)). Indeed, "[t]he Supreme Court has clearly indicated that the state courts have

substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 645 (1974)). Thus, in order to obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim "'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Parker v. Matthews*, 567 U.S. 37, 47 (2012) (quoting *Harrington*, 562 U.S. at 103). Petitioner cannot make that showing here. Moreover, Petitioner has failed to demonstrate that the factual determinations upon which the Michigan Court of Appeals relied are unreasonable, nor has he shown that the appellate court's determination rejecting Petitioner's witness intimidation claim is contrary to, or an unreasonable application of *Webb*. Accordingly, Petitioner is not entitled to habeas relief on this claim.

## Conclusion

In light of the foregoing, the Court will summarily dismiss Petitioner's application pursuant to Rule 4 because it fails to raise a meritorious federal claim.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court's dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a determination that the habeas action, on its face, lacks sufficient merit to warrant service. It would be highly unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that an issue merits review, when the Court has already determined that the action is so lacking in merit that service is not warranted. *See Love v. Butler*, 952 F.2d 10, 15 (1st Cir. 1991)

(it is "somewhat anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v. Vasquez*, 908 F.2d 490, 492 (9th Cir. 1990) (requiring reversal where court summarily dismissed under Rule 4 but granted certificate); *Dory v. Comm'r of Corr. of New York*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when habeas action does not warrant service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.

The Court will enter a judgment and order consistent with this opinion.


Dated:   March 15, 2019           /s/ Robert J. Jonker                          
                                 ROBERT J. JONKER
                                 CHIEF UNITED STATES DISTRICT JUDGE